## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ANTHONY L. VERDINI | : | CIVIL NO:1:06-CV-0067 |
| ———————————————— | : | |
| ANTHONY L. VERDINI, | : | (BK. NO. 1:05-BK-00806) |
|      Appellee | : | |
|     v. | : | |
| SUSAN POIRER, | : | |
|     Appellant | : | |

## M E M O R A N D U M

Before the court is an appeal from an order of the Bankruptcy Court for the Middle District of Pennsylvania. The parties have briefed the issues, and the matter is ripe for disposition. For the reasons that follow, the court will affirm the order of the bankruptcy court.

I.      **Background**

The facts are well known to the parties, thus the court will briefly discuss the facts pertinent to the disposition of this appeal. Appellee and Appellant were married in 1981 and divorced in 1998. The parties' divorce decree incorporated a marriage settlement agreement that enumerated the disposition of assets and liabilities. At issue in the instant case are two requirements of the marriage settlement agreement: Section 22 classified as "Cash Payments," requiring Appellee to make monthly payments to Appellant in the amount of 4,583.34 dollars for 120 months or until Appellant's death and Section 23 classified as "Alimony,"

requiring Appellee to make payments to Appellant in the amount of 4,583.34 dollars for 120 months or until Appellant's death.  During the course of their marriage the parties formed at least three corporations.  As part of the marriage settlement agreement, Appellee transferred interest in one corporation to Appellant and retained interest in the two remaining corporations.  The cash payments and alimony provisions were designed to compensate Appellant for her remaining interest in those two corporations.

Between March 1998 and January 2000, Appellant received monthly checks from Appellee satisfying the financial obligation under both the cash payment and alimony provisions of the marriage settlement agreement.  However, at some point in late 1998 or early 1999, Appellee began to experience certain business difficulties.  Since January 2000, Appellee has not met his financial obligation to Appellant under the marriage settlement agreement.

Appellant has not remarried and has no children.  Appellee has remarried and has two dependant children.  As of 2005, Appellee's monthly income was 5,226.41 dollars and his monthly expenses were 5,142.00 dollars.  Appellant's annual and monthly incomes have not been placed into evidence.

Appellee initiated Chapter 11 bankruptcy proceedings asserting that both the cash payment and alimony obligations of the marriage settlement agreement should be dischargeable.  On December 2, 2005, after a trial before the bankruptcy court, judgment was entered in favor of Appellee.  Specifically, the bankruptcy court found that Appellee's cash payments were dischargeable under 11 U.S.C. § 523(a)(15) and that the alimony obligation was dischargeable under 11 U.S.C. § 523(a)(5).  Appellant appeals both findings.

II.        **Legal Standard**

_____District courts have appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court.  28 U.S.C. § 158(a)(1).  When reviewing the bankruptcy court's factual determinations, the district court will not disturb such findings unless it finds that the bankruptcy court committed clear error.  *In re Fegley*, 118 F.3d 979, 982 (3d Cir. 1997).  The district court, however, reviews the bankruptcy court's legal decisions *de novo*, *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994), and "its exercises of discretion for abuse thereof."  *In re Professional Ins. Management*, 285 F.3d 268, 282-83 (3d Cir. 2002) (citing *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997)).

III.       **Discussion**

_____Appellant raises four arguments: 1) the bankruptcy court erred when it refused to apply quasi-estoppel to Appellee's claim that his payments labeled alimony were intended to be payments other than alimony; 2) the bankruptcy court erred in its application of the law to the facts; 3) the bankruptcy court erred in its application of case law; and 4) the bankruptcy court erred in finding that the cash payment obligation of the marriage settlement agreement was dischargeable.  After setting forth the relevant statutory provisions and applicable case law, the court will examine each of Appellant's arguments in turn.

_____Appellant's first three arguments relate solely to the alimony payments, while her fourth argument relates to the alimony and cash payments.  With respect to the alimony provision, 11 U.S.C. § 523(a)(5) is the relevant statute.  Section 523(a)(5) provides that a debtor is not discharged from any debt

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

\*     \*     \*

(B) such debt includes a liability *designated* as alimony, maintenance, or support, unless such debt *is actually* in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

Thus, under § 523(a)(5) obligations that are in the nature of support are non-dischargeable; however, obligations that are labeled alimony, but are not in the nature of support may be dischargeable. Courts must look "beyond the label attached to an obligation by a settlement agreement to examine its true nature." *In re Gianakas,* 917 F.2d 759, 762 (3d Cir. 1990).

As provided by *Gianakas*: "[W]hether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement." *Id*. In order to determine the parties' intent *Gianakas* identified three factors to be examined by the trial court: (1) "the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary"; (2) "the parties' financial circumstances at the time of the settlement"; and (3) "the function served by the obligation at the time of the divorce or settlement." *Id.*

4

With respect to the cash payments provision of the marriage settlement agreement, 11 U.S.C. §523(a)(15) is the controlling statute.  Section 523(a)(15) provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> \*   \*   \*
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ; or
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

## A.    Quasi-Estoppel

Appellant asserts that "[t]he Bankruptcy Court erred in refusing to apply quasi-estoppel to preclude [Appellee] from asserting that his alimony payments pursuant to the marital property settlement agreement are dischargeable." (Appellant's Br. at 5.)  Because this revolves around a legal decision, the court reviews the bankruptcy court's determination *de novo*.  *In re Siciliano*, 13 F.3d at 750.

Paragraph 23 of the marriage settlement agreement provided that Appellee would make monthly payments in the form of alimony to Appellant. Appellee classified said payments as alimony on his federal tax returns and deducted

the payments from his income.  Appellant argues that by classifying the payments in question as alimony on his tax returns, Appellee accepted the benefits of tax deductions.  Thus, according to Appellant, quasi-estoppel should apply to Appellee's claim that his payments, designated as alimony under the marriage settlement agreement, were intended to be payments other than alimony.  Appellee counters that the payments designated as alimony were never intended to serve as alimony; therefore, under § 523(a)(5), the debt is dischargeable.

In support of her position Appellant cites to *Matter of Davidson*, 947 F.2d 1294 (5th Cir. 1991) and *In re Robb*, 23 F.3d 895 (4th Cir. 1994).  Both the *Davidson* and *Robb* courts applied quasi-estoppel in analogous situations.  *Davidson* provided that

> [t]o allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes.

947 F.2d at 1297.  The court finds that the language of *Davidson* unequivocally supports Appellant's position; however, the Third Circuit has not directly addressed the issue, and the court is not bound by the decisions in *Davidson*, 947 F.2d 1294 or *Robb*, 23 F.3d 895.  For the reasons that follow, the court disagrees with Appellant's position and will affirm the bankruptcy court's decision.

To begin the court returns to the language of § 523(a)(5), which provides that a debt classified as alimony is dischargeable "unless such debt *is actually* in the nature of alimony, maintenance, or support."  11 U.S.C. § 523(a)(5) (emphasis added).  It is well established that the canons of statutory

6

construction "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992).  The court must look to the actual nature of the debt and "beyond the label attached to an obligation by a settlement agreement to examine its true nature." *In re Gianakas*, 917 F.2d at 762.

Moreover, the court finds Appellant's argument that the classification of the payments for tax purposes is decisive per quasi-estoppel to be flawed because Third Circuit case law mandates that "whether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to *the intent of the parties at the time of the settlement* agreement." *In re Gianakas*, 917 F.2d at 762 (emphasis added).  Thus, the fact that Appellee classified his debt at a later time as alimony does not determine that the parties, at the time of entering into the settlement agreement, intended the debt to serve in the nature of alimony.  Therefore, the court does not find that the bankruptcy court erred when it refused to apply quasi-estoppel, and the court will affirm the bankruptcy court's decision with respect to this issue.

Appellant argues that even if this court rejects the rationale of *Davidson* and *Robb*, the court should look to "other factors" as provided by *In re Sternberg*, 85 F.3d 1400, 1406 (9th Cir. 1996) (overruled on other grounds).[1]  *In re Sternberg* provided that " '[t]hose courts which have looked to the tax treatment of the obligation . . . have usually done so as part of an overall analysis involving many

---

[1] Specifically, Appellant states that she "urges the court to adopt *Davidson* and *Robb*. However, should the court choose not to do so, and follow *Sternberg*, there are, indeed, several other 'factors' which would give weight to [Appellant's] argument for nondischargeability." (Appellant Br. at 9.)

other factors, and have rarely found the tax treatment of a debt dispositive on dischargeability.' " *Id.* (quoting Sommer, McGarity & King, Collier Family Law and the Bankruptcy Code, § 6.04[10] at p. 6-48 (1995)).[2]

Appellant cites to the facts that the debt was designated as alimony in the marital settlement, that Appellant also treated the payments as alimony for tax purposes, and that the marital settlement detailed a distinction between cash payments and alimony, that the agreement calls for installment payments to be made over time directly to Appellant and that the obligation terminated upon Appellant's death as other factors which support denying the discharge of Appellee's debt classified as alimony.

The fact that the parties classified some of the debt as alimony forms the basis of Appellant's claim; however, the fact that an obligation is designated alimony, is not dispositive of the parties' intent at the time of undertaking the obligation. *See In re Gianakas,* 917 F.2d at 762. Therefore, the fact that a marital settlement agreement designates some debt as alimony does not convince the court that the debt was actually intended to serve as alimony. Moreover, because some debts were designated as alimony, it was necessary that the marital settlement agreement distinguished between cash payments and alimony. The court finds that the distinction between alimony and cash payments is not dispositive of the parties' intent at the time of entering into the marriage settlement agreement.

As to Appellant's argument that she also listed the payments as alimony for tax purposes, the court finds that if the payments were given under the heading

---

[2]The court notes that the bankruptcy court relied upon *In re Sternberg*, 85 F.3d at 1400 in its decision. *Verdini v. Poirer*, No. 05-806, slip op. at 10 (Bankr. M.D. Pa. Dec. 2, 2005).

of alimony, then Appellant was legally required to report the cash payments as alimony for tax purposes.  Appellant's fulfillment of her legal duty after the obligation was undertaken is not dispositive of the parties' intent at the time the obligation was undertaken.

With respect to Appellant's argument that the agreement calls for installation of payments to be made over time directly to Appellant and that the obligation terminated upon Appellant's death as additional supporting factors, the court notes that the same provisions are part of the cash payment obligation of the marital settlement agreement.  Thus, these provisions fail to illuminate any intent on behalf of either party at the time of entering into the agreement.

The court is not persuaded that any of the additional factors asserted by Appellant warrant denying the discharge of Appellee's debt classified as alimony.  Accordingly, the court will deny Appellant's appeal with respect to the aforementioned issues.

### B.    Application of Law to the Facts

Appellant argues that the bankruptcy court erred by applying Pennsylvania state law to the determination of whether the alimony provision of the marriage settlement agreement was in the nature of support under § 523(a)(5).  Appellant's argument revolves around a question of law and the court will review the bankruptcy court's decision *de novo*.  *In re Siciliano*, 13 F.3d at 750.

According to the Third Circuit, the determination of whether a provision qualifies as support is a matter of federal law and not of state law.  *In re Gianakas*, 917 F.2d at 762.  In support of her position Appellant cites to the

bankruptcy court's discussion of the terms of alimony under state law.  Specifically, the bankruptcy court stated that

> [i]n Pennsylvania, " '[a]limony' is a payment of support by one former spouse following divorce made to meet needs of the other former spouse who is unable to support himself or herself through appropriate employment." *Johnson v. Johnson*, 864 A.2d 1224, 1229 (Pa. Super. 2004) (citing *Miller v. Miller*, 744 A.2d 778 (Pa.Super.1999)). The Pennsylvania state courts have held that "[a]limony 'is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.' Moreover, '[a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.' " *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super. 2004) (quoting *Moran v. Moran*, 839 A.2d 1091, 1096- 97 (Pa.Super. 2003) (italics in the original)).

*Verdini*, No. 05-806, slip op. at 7-8.

Although the bankruptcy court referenced state law, the reference to state law was done in the context of the language and substance of the marriage settlement agreement within the ambit of *Gianakas*'s three prong analysis.  *See In re Gianakas,* 917 F.2d at 762.  In the instant case, the bankruptcy court looked to state law to help define the language and substance of the agreement as part of its analysis under controlling federal case law.  It is well settled that federal courts may look to state law for guidance.  *Forsdick v. Turgeon*, 812 F.2d 801, 803-04 (2d Cir.1987); *In re Weisberg*, 218 B.R. 740, 759 (E.D. Pa. 1998) ("[I]n making [the determination of whether a debt is dischargeable], a bankruptcy court is often obliged to refer to state law to provide guidance on this issue.").

Regardless, the use of state law was but one factor in the bankruptcy court's determination that the parties did not intend for the alimony provision of the

marriage settlement agreement to serve as alimony.  Specifically, the bankruptcy court relied upon correspondence between the parties' divorce attorneys.[3] Appellant's divorce counsel stated that the provision labeled alimony was not intended to satisfy an alimony claim; rather, according to Appellant's attorney, the provision labeled alimony was to serve as a structured buyout of Appellant's interest in the two remaining corporations that Appellee retained interest in.  Based on the admissions of Appellee's divorce attorney, the bankruptcy court concluded that the payments labeled alimony were not intended to be in the nature of support and were dischargeable under § 523(a)(5).

The court finds that the bankruptcy court properly applied relevant case law to the applicable facts of the instant case.  Therefore, the court will deny Appellant's appeal with respect to this issue.

### C.   Application of Case Law

Appellant argues that the bankruptcy court erred in its application of *In re Gianakas,* 917 F.2d 759 and *Buccino v. Buccino*, 580 A.2d 13 (Pa. Super. Ct. 1990).  Appellant argues that because the instant case deals with monetary payments specifically classified as alimony, and *Gianakas* and *Buccino* did not deal with cases where there was a specified designation of alimony, the logic of *Gianakas* and *Buccino* does not apply.

---

[3]Appellant's attorney communicated to Appellee's attorney that

> [t]hese payments were not ever intended to satisfy an alimony claim; they were a way of structuring the buy-out to offer an additional benefit to [Appellee].  While we can call them alimony for tax purposes, the criteria were not a factor to this decision.

(Appellant Br., Ex. P-3.)

However, *Gianakas* stated that "[t]his is the first opportunity this court has had to analyze which factors should be considered by the bankruptcy court in determining whether an obligation arising out of a divorce settlement is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code." *In re Gianakas,* 917 F.2d at 762.  Thus, *Gianakas* is directly on point to the issue in the instant case, whether the obligation is in the *nature* of alimony.  There was no abuse of discretion by the bankruptcy court in its reliance upon *Gianakas* in the instant case.

With respect to the *Buccino* case, the court does not find that the bankruptcy court relied substantively upon *Buccino* in its decision; rather, the bankruptcy court looked to *Buccino* only in brief.[4]  Thus, the court finds no abuse of discretion with respect to the bankruptcy court's use of *Buccino*.

Furthermore, Appellant argues that bankruptcy court failed to consider the characterization of the payments as alimony, the tax treatment by both parties of the cash payments, and finally the distinction between cash payments and alimony as provided in the marriage dissolution settlement.  The court finds that the bankruptcy court appropriately addressed the issues regarding the characterization

---

[4]There were four citations to *Buccino* in the bankruptcy court's sixteen page decision, all of which were in the context of the *Gianakas*'s three prong analysis.  The first citation is as a tertiary citation following citations to cases from the Third Circuit and the Eastern District of Pennsylvania.  The second citation was as a primary citation that cited to *In re Jenkins*, 94 B.R. 355 (Bankr. E.D. Pa. 1988).
        Finally, the bankruptcy court also cited to *Buccino* for the following two positions.  First, "[a]n obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support."  *Buccino,* 580 A.2d at 19.  Secondly, "[p]roperty division is based on each parties' right to a fair share of the property accumulated during the marriage."  *Id.* at 21.  These are not novel positions and the bankruptcy court did not abuse its discretion by referring to *Buccino* in support of these positions.

of the payments as alimony and the distinction between alimony and cash payments under *Gianakas*. Regardless, this court has examined the same issues, and determined that they do not establish that the parties intended, at the time of entering into the agreement, that the payments classified as alimony were actually supposed to serve as alimony. *See supra* 7-9. The court will deny Appellant's appeal with respect to this issue.

### D.   Discharge under § 523(a)(15)(A)

Finally, Appellant argues that the bankruptcy court improperly dismissed Appellee's financial obligations under § 523(a)(15)(A). The bankruptcy court found that Appellee met the ability to pay test under § 523(a)(15)(A), and that he could discharge his obligations to Appellant under § 523(a)(15)(A). According to the bankruptcy court, even if all of Appellee's expenses were disallowed as unreasonable, Appellee would not have the ability to pay the amount demanded by Appellant. Specifically, Appellant seeks payment of 9,166 dollars per month; however, Appellee's monthly net salary is 5,142 dollars.[5]

The bankruptcy court noted that it is not appropriate for it to restructure the payments as set forth in the marriage settlement agreement. This court agrees. Put simply, the amount of Appellee's obligation exceeds his monthly income; thus, it matters little whether, as Appellant argues, Appellee's expenses are inflated. Appellee is unable to pay over nine thousand dollars with an amount barely exceeding five thousand dollars. Accordingly, the court finds that the bankruptcy

---

[5]The bankruptcy court noted that neither party addressed the issue of a partial discharge of Appellee's obligations under § 523(a)(15). *Verdini*, No. 05-806, slip op. at 14 n.7. The court notes that Appellant does not raise this issue on appeal.

properly discharged Appellee's debt under § 523(a)(15).  The court will deny

Appellant's appeal with respect to this issue.

**IV.**        <u>**Conclusion**</u>

       In accordance with the foregoing discussion, the court will deny

Appellant's appeal from the bankruptcy court's order and affirm the decision of the

bankruptcy court.  An appropriate order will issue.

<u>s/Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated:  April 7, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


IN RE: ANTHONY L. VERDINI            :
                                     :          CIVIL NO:1:06-CV-0067
_____      :
                                     :
ANTHONY L. VERDINI,                  :          (BK. NO. 1:05-BK-00806)
                   Appellee          :
                                     :
            v.                       :
                                     :
SUSAN POIRER,                        :
                   Appellant         :

## O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The bankruptcy court's order dated December 2, 2005 is **AFFIRMED**.

2) The Clerk of Court shall close the file.


                                    s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated:  April 7, 2006.